UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 24-CR-0302 (PJS/LIB) |
| Plaintiff, | |
| v. | ORDER |
| MASON ALEXANDER BULLHEAD, | |
| Defendant. | |

Rachel Lynn Kraker, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Andrew H. Mohring, GOETZ & ECKLAND, P.A., and Nicole A. Kettwick, BRANDT CRIMINAL DEFENSE, for defendant.

This matter is before the Court on defendant Mason Alexander Bullhead's objection to the August 25, 2025, Report and Recommendation ("R&R") of Magistrate Judge Leo I. Brisbois. Judge Brisbois recommends denying Bullhead's motion to suppress a statement that Bullhead made to law-enforcement officers on May 15, 2024.[1] The Court has conducted a de novo review.[2]  See 28 U.S.C. § 636(b)(1); Fed. R. Crim. P.

---

[1]Bullhead has dropped his challenge to a different statement that he made on May 13, 2024.  See ECF No. 63 at 2; ECF No. 55 at 24.

[2]The Court declines the government's invitation to review only for clear error. See ECF No. 64 at 6 (arguing that Bullhead's objection "amounts to a general disagreement with the R&R"). Because Bullhead directly engages with the R&R's reasoning, de novo review is required. See, e.g., United States v. Lothridge, 324 F.3d 599, 600–01 (8th Cir. 2003) (noting, sua sponte, a district court's failure to review de novo the

(continued...)

59(b)(3). Based on that review, the Court adopts the R&R insofar as it is consistent with this order and overrules Bullhead's objection.

## I. BACKGROUND

As described more fully in the R&R, Bullhead was arrested by Red Lake police officers on May 13, 2024, and arraigned before the Red Lake Nation Tribal Court on May 14. After being arraigned, Bullhead was detained at the Red Lake Detention Center ("Detention Center"). ECF No. 60 at 2–3; ECF No. 50 at 42:19–43:11; ECF No. 55-1.

At about 10:00 am the following day, May 15, a corrections officer employed by the Detention Center (the "CO") arrived at Bullhead's cell and told him "that there were people there to see [him]." ECF No. 50 at 50:5–15. The CO did not tell Bullhead that the "people" who wanted to see him were law-enforcement officers. Bullhead responded that he "did not want to speak with anybody," ECF No. 50 at 50:24–51:3—without giving any indication that he knew or suspected that his visitors were law-enforcement officers[3]—but the CO told Bullhead that he "had no choice." ECF No. 50 at 52:14–19. Bullhead was handcuffed and accompanied to an interview room where FBI Special

---

[2](...continued)
objected-to portions of an R&R recommending denial of a motion to suppress).

[3]Bullhead testified at the suppression hearing that he believed that the "people there to see [him] were law enforcement," but, again, he never communicated that belief to the CO or anyone else. ECF No. 50:20–51:3; 56:19–24.

Agent Bradley Klag and Red Lake Criminal Investigator Ron Leyba were waiting. *See* ECF No. 50 at 21:12–23 (describing the Red Lake Nation Law Enforcement Center's layout and the room where the interview took place).

Once Bullhead was seated in the interview room, Leyba offered Bullhead a cup of coffee and told him that if he "behave[d] and stuff like that the—things are gonna go good here, okay[?]" Def. Ex. 3 at 3; *see also* ECF No. 50 at 40:2–10. As Leyba handed the still-handcuffed Bullhead his coffee—and before any interview of Bullhead began—Klag administered the following *Miranda* warning:

> Alright [M]ason so before we ask you any questions you must understand your rights. You have the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during the questioning. If you cannot afford a lawyer one will be appointed for you before any questioning if you wish. If you decide to answer questions without a lawyer now without a lawyer present, you have the right to stop answering at any time. And this next one I'm going to read to you and then I'm going to have you read aloud. Umm . . . it says I have read the statement of my rights and I understand what my rights are. At this time, I'm willing to answer questions without a lawyer present.

Def. Ex. 3 at 6; *see also* ECF No. 50 at 24:19–26:15.  Bullhead read the final statement aloud as instructed, then signed the FBI's Advice of Rights form.  Gov't Ex. 1; Def. Ex. 3 at 6–7.

Klag and Leyba then began to interview Bullhead.  The interview lasted about 90 minutes.  During the interview, Bullhead made several incriminating statements, which he now seeks to suppress.  *See* Def. Ex. 3 at 58–79.

## II. ANALYSIS

### A. Fifth Amendment Right to Remain Silent

Bullhead argues that he unambiguously invoked his right to remain silent when he told the CO that he "did not want to speak with anybody."  ECF No. 50 at 50:24–51:3; ECF No. 63 at 2–3.  Once an individual who is subject to custodial interrogation "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."  *Miranda v. Arizona*, 384 U.S. 436, 473–74 (1966).  Police must "scrupulously honor[]" a defendant's "right to cut off questioning," *Michigan v. Mosley*, 423 U.S. 96, 104 (1975), but "[i]ndirect, ambiguous, [or] equivocal statements or assertions of an intent to exercise the right to remain silent are not enough to invoke that right," *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2009).  A suspect's statement that he does not want to talk to a law-enforcement officer must be made "sufficiently clearly that a reasonable police officer in the circumstances would

understand the statement to be a request" by the suspect to invoke his right to remain silent under the Fifth Amendment. *Davis v. United States*, 512 U.S. 452, 459 (1994); *see also Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (applying the *Davis* rule in the right-to-silence context). The inquiry is objective, and courts evaluate the alleged invocation of the right to remain silent "as a whole." *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995). Law enforcement need not cease interrogation unless the suspect makes "a clear, consistent expression of a desire to remain silent." *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989).

For three reasons, the Court finds that Bullhead's statement to the CO did not preclude Klag and Leyba from giving Bullhead a *Miranda* warning and then asking him to answer questions: (1) Bullhead's statement to the CO preceded any custodial interrogation; (2) Bullhead's statement was made to a CO who did not have any investigatory or prosecutorial role; and (3) Bullhead's statement was ambiguous. The Court will discuss these reasons in turn.

1. Pre-*Miranda* Invocation

Bullhead was not subject to interrogation when he told the CO that he did not want to speak to anybody. The protections of *Miranda* attach "not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). "'Interrogation,' as

conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.*  As a result, the Fifth Amendment's safeguards only "come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Id.* at 300–01.

True, *Miranda* says that a defendant may invoke his rights "at any time *prior to* or during questioning," 384 U.S. at 473–74 (emphasis added), but the Supreme Court has "never held that a person can invoke his *Miranda* rights anticipatorily," *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991) ("Most rights must be asserted when the government seeks to take the action they protect against.").[4]  Federal and state courts broadly agree that an anticipatory invocation of the right to remain silent does not preclude law-enforcement officers from attempting to question the suspect.  *See, e.g., Alston v. Redman*, 34 F.3d 1237, 1251 (3d Cir. 1994) ("We decline to extend the reach of *Miranda-Edwards* to encompass a suspect sitting in his cell, free of any interrogation impending or otherwise."); *United States v. LaGrone*, 43 F.3d 332, 339 (7th Cir. 1994) ("[I]n order for a defendant to invoke his *Miranda* rights, the authorities must be conducting interrogation, or interrogation must be imminent."); *United States v. Grimes*, 142 F.3d 1342, 1348 (11th Cir. 1998) ("*Miranda* rights may be invoked only during

---

[4]*See also Miranda*, 384 U.S. at 473–74 ("*Once warnings have been given*, the *subsequent* procedure is clear.  If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.") (emphasis added).

custodial interrogation or when interrogation is imminent."); *People v. Villalobos*, 737 N.E.2d 639, 645 (Ill. 2000) ("[*Miranda* rights] do[] not exist outside the context of a custodial interrogation.  One cannot invoke a right that does not yet exist."); *Gupta v. State*, 156 A.3d 785, 802 (Md. 2017) ("The entire package of *Miranda* protections is confined to the special context of custodial interrogation.  They may not be invoked anticipatorily.") (cleaned up).

Some courts have said that defendants can invoke their Fifth Amendment rights when interrogation is "imminent," but the word "imminent" does not appear in this context in *Miranda* or in any of the Supreme Court's decisions applying *Miranda*.  See *Charette v. State*, 980  N.W.2d 310, 315–17 (Minn. 2022).  Moreover, "many of the courts that have adopted the 'imminent interrogation' rule offer little analysis or justification for adopting the standard."  *Id.* at 317–18.  Typically, courts that allow "imminent" invocation do not define the term.

This Court need not address these issues, however.  Even if the right to silence can be invoked by a suspect when he knows that questioning by law-enforcement officers is imminent, that is not what happened here.  At the time Bullhead told the CO that he did not want to talk to anyone, Bullhead did not know that his visitors were law-enforcement officers, he was unaware that the CO was transporting him to an interview room, and he had not yet been approached by investigators, advised of his

*Miranda* rights, or subjected to any "express questioning or its functional equivalent." *Innis*, 446 U.S. at 300–01.  A defendant may not have to "wait until after the first custodial question is asked to effectively assert his right to [remain silent]."  *United States v. Hinkson*, No. CR-04-127-S-RCT, 2004 WL 7333646, at *8 (D. Idaho Dec. 22, 2004). But a defendant's statement that he does not want to speak to (unknown) visitors—made "in a holding cell, before any interrogation had taken place" and "to [a CO] who was guarding him, rather than the detectives who later questioned him"—falls "well outside the scope of any permissible definition of 'imminence' in the sense of an impending interrogation."  *Gupta*, 156 A.3d at 803.  Bullhead's purported invocation of his right to silence was "premature and thus ineffective."  *United States v. Baez*, No. 17-135 (ADM/DTS), 2018 WL 6047802, at *4 (D. Minn. Sept. 13, 2018), *report and recommendation adopted* 2018 WL 5307826 (D. Minn. Oct. 26, 2018), *aff'd on other grounds*, 983 F.3d 1029 (8th Cir. 2020).

2.  Invocation to a Non-Investigating Official

Second, even assuming that interrogation was "imminent" when Bullhead told the CO that he did not want to speak to any visitors, Bullhead's statement did not preclude questioning by Klag and Leyba because Bullhead made his statement to a CO (and not to a police officer or other investigator) and because neither Klag nor Leyba was even aware of it.  Although the Supreme Court has implied that one *officer*'s

knowledge of a defendant's invocation of his right to silence is imputed to all other officers, *Arizona v. Roberson*, 486 U.S. 675, 687–88 (1988), the *Miranda* rule cannot workably impute the knowledge of every person working at a detention center to the FBI agents and other law-enforcement officers investigating a case. *See Alston*, 34 F.3d at 1250 (concluding that *Roberson* did not apply "to a non-investigating state official such as a warden"). As the Third Circuit explained in *Alston*, the "practical implication" of *Roberson*'s holding "is that noninvestigatory officials charged with the mere custody or care of a suspect, e.g., jailers, doctors, vocational instructors, should not be considered state agents capable of accepting a suspect's invocation of his *Miranda* rights." *Id.* at 1250–51.

The *Alston* approach admittedly places on the defendant the burden of invoking his right to silence to the "correct" government official. But as the Third Circuit observed, "[a]ny other interpretation of *Roberson* would not provide serviceable guidance to law enforcement officials . . . since, in effect, they would become absolutely liable for any statement made by an incarcerated suspect to his jailer." *Id.* at 1251; *see also Guilday v. Crisis Ctr. at Crozer-Chester Med. Ctr.*, No. 21-2010, 2022 WL 612865, at *7 (E.D. Pa. Mar. 1, 2022), *aff'd in part, vacated in part on other grounds*, No. 22-1519, 2022 WL 17484328 (3d Cir. Dec. 7, 2022) (per curiam) ("Statements made while in custody to persons not connected with the government do not fall under *Miranda*."); *People v.*

*Vasquez*, 155 P.3d 588, 592 (Colo. Ct. App. 2006) ("[I]nterrogators are not charged with knowledge of a suspect's attempt to invoke his Fifth Amendment right to counsel in prior communications with government officials not charged with the investigation of criminal activity."). Here, the CO's role was strictly custodial. He merely walked Bullhead from his cell to an interview room in another area of the Red Lake Law Enforcement Center. The CO did not ask Bullhead any questions, quickly departed after delivering Bullhead to investigators, and said nothing to Klag or Leyba about Bullhead's prior statement. The CO had no more connection to the investigation of Bullhead than, say, a custodian or cook who worked at the Detention Center. Under these circumstances, Bullhead's statement to the CO was not an effective invocation of his right to remain silent.

### 3. Facial Ambiguity

Finally, Bullhead's statement to the CO simply did not constitute a clear, unequivocal, and unambiguous invocation of his right to remain silent. The statement was "not made in response to any questioning about the crime," *Johnson*, 56 F.3d at 955, but in response to being told only that "people were there to see [him]." ECF No. 50 at 50:15. Bullhead's statement that he did not want to "speak with anybody" could easily have been understood by the CO as a statement by Bullhead that "I'm not in the mood for company" or "I'm tired, leave me alone." *See Mann v. Thalacker*, 246 F.3d 1092, 1100

(8th Cir. 2001) ("Being evasive and reluctant to talk is different from invoking one's right to remain silent.").

Bullhead's testimony at the suppression hearing that, at the time he made the statement, he subjectively believed that his unidentified visitors were law-enforcement officers does not make his statement any less ambiguous, as he never expressed that belief to the CO or anyone else. ECF No. 50 at 50: 13–51:3; *see, e.g.*, *Lopez v. Janda*, 742 F. App'x 211, 214 (9th Cir. 2018) ("[I]t is not [a defendant's] intent that matters; it is whether his statement would have been unambiguous to a reasonable officer."); *Alston*, 34 F.3d at 1251 n.14 (noting that a "suspect's state of mind is essentially irrelevant, because a suspect cannot 'believe' a right into existence"). In short, Bullhead's statement to the CO that he did not want to "speak with anybody" was not a sufficiently clear invocation of Bullhead's Fifth Amendment right to remain silent.

### B. *Post*-Miranda Voluntary Waiver

Bullhead next argues that, even if he did not validly invoke his right to remain silent, his subsequent *Miranda* waiver and confession were involuntary. ECF No. 63 at 8–9. A *Miranda* waiver is valid only if it is (1) "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). In assessing the

validity of a waiver or confession, courts "examine the totality of the circumstances to determine whether pressures exerted by the authorities overwhelmed the defendant's will." *United States v. Rodriguez-Hernandez*, 353 F.3d 632, 636 (8th Cir. 2003) (quotation omitted).

Bullhead argues that his *Miranda* waiver was involuntary for two reasons: First, the CO told Bullhead back at his cell that he "had no choice" after Bullhead had said that he did not want to talk with anyone. ECF No. 50 at 52:14–16. Second, Leyba told Bullhead while getting him a cup of coffee that "if you behave . . . things are gonna go good here." Def. Ex. 3 at 3. The Court disagrees.

The CO's statement that Bullhead "had no choice" gives the Court pause, but after reviewing the record, the Court concludes that the CO's statement did not overbear Bullhead's will. The CO's statement was ambiguous. He may have been telling Bullhead that he had no choice but to *accompany* the CO (a reality of incarceration), or he may have been telling Bullhead that he had to *speak* to the unidentified "people" who were waiting for him. In any event, what is clear is that the comment was made by a CO (not a law-enforcement officer), and that before Bullhead was asked any questions, he was told by a law-enforcement officer that he *did* have a "choice" not to answer questions, and Bullhead acknowledged that he understood that right.

As for Leyba's comment:  Bullhead's own testimony at the suppression hearing forecloses the argument that he understood Leyba to be promising leniency if Bullhead waived his right to remain silent.  When asked about Leyba's statement, Bullhead agreed that Leyba was talking about a "dustup" they had during his arrest two days earlier:

> Q:   Okay.  But you—in that moment, when he said, "Are you going to behave?  If you behave in here, things are going to go good for you," you know he's talking about the fact that two days ago you guys had an interaction together, a dustup?
>
> A:   Yeah.  I– I–I know Leyba and I know how he is.  So yes.
>
> . . .
>
> Q:   You knew what he was talking about?
>
> A:   Yes.

ECF No. 50 at 60:22–61:2, 61:15–19; *see also* ECF No. 60 at 13.  And even if Leyba's comment was construed to be a promise of leniency, that comment was "far from threatening or coercive."  *Fare v. Michael C.*, 442 U.S. 707, 727 (1979); *see also Simmons v. Bowersox*, 235 F.3d 1124, 1133 (8th Cir. 2001) ("The statement to an accused that telling the truth 'would be better for him' does not constitute an implied or express promise of leniency for the purpose of rendering his confession involuntary.").  That is especially true given that Leyba's statement was followed almost immediately by Bullhead being informed of his *Miranda* rights.  *See Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984)

("But cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare.").

For these reasons, the Court finds that Bullhead's waiver was voluntary, knowing, and intelligent, and that his confession was not the product of coercion.

### C. Sixth Amendment Right to Counsel

Finally, Bullhead argues that his Sixth Amendment right to counsel was violated by Klag and Leyba because they questioned him outside the presence of his tribal-court advocate, a non-lawyer who had been appointed by the tribal court to assist Bullhead in tribal-court proceedings.[5] ECF No. 63 at 9–11. The Court agrees with Judge Brisbois that the Sixth Amendment did not bar Klag and Leyba from initiating contact with Bullhead "without first notifying [his] appointed tribal court lay advocate," but the Court writes to clarify one point. ECF No. 60 at 16.

Both the R&R and Bullhead's objection devote undue attention to the Eighth Circuit's opinion in *United States v. Red Bird*, 287 F.3d 709 (8th Cir. 2002), and to the fact

---

[5]The tribal-court advocate was appointed to represent Bullhead in tribal-court proceedings related to charges stemming from the same incident underlying the federal indictment. *See* ECF No. 1; ECF No. 55-1. "The right to an attorney in tribal court is guaranteed by the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1302(6) (2001), but only at the expense of the defendant." *United States v. Red Bird*, 287 F.3d 709, 713 (8th Cir. 2002). Red Lake Nation appoints tribal-court advocates for indigent criminal defendants, but these advocates are not required to be licensed attorneys. ECF No. 50 at 26:23–27:6; *see also id.* at 31:21–32:6, 43:2–44:3.

that Bullhead's tribal-court advocate was not an attorney. The defendant in *Red Bird* had been appointed a licensed attorney, and the Eighth Circuit simply held that, under *Michigan v. Jackson*, 475 U.S. 625 (1986), law-enforcement officers could not interrogate the defendant outside the presence of his attorney, even if the defendant received a *Miranda* warning and waived his right to have counsel present. *Id.* at 716 ("Until such time as the full Court overrules *Michigan v. Jackson*, we are bound to apply it. Therefore, we find that Red Bird's waiver of his right to counsel was invalid."). *Jackson* was later overturned by *Montejo v. Louisiana*, 556 U.S. 778 (2009), which held that law-enforcement officers can approach a represented defendant outside the presence of his attorney and question him if, after receiving a *Miranda* warning, the defendant waives his right to have his attorney present. The Supreme Court explained:

> Our precedents . . . place beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled. And when a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick . . . .

556 U.S. at 786 (citations omitted).

Hence, it simply does not matter "whether the appointment of a Red Lake Nation Tribal Court advocate [who was not a lawyer] was sufficient for the Sixth

Amendment right to counsel to attach." ECF No. 60 at 15. Even if the right to counsel *did* attach, Bullhead waived that right after receiving a *Miranda* warning. That "d[id] the trick." *Montejo*, 556 U.S. at 786.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's objection [ECF No. 63] is OVERRULED.

2. The Report and Recommendation [ECF No. 60] is ADOPTED insofar as it is consistent with this order.

3. Defendant's motion to suppress statements [ECF No. 35] is DENIED.


Dated:  December 11, 2025               /s/ Patrick J. Schiltz
                                        Patrick J. Schiltz, Chief Judge
                                        United States District Court